UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIS DISMUKE MURRAY,

             Petitioner,

    v.

XAVIER BECERRA, California Attorney General

             Respondent.

Case No. 16-cv-05640-HSG

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is Petitioner Willis Dismuke Murray's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254, challenging the validity of a conviction obtained against him in state court. Dkt. No. 1 ("Pet."). Respondent has filed an answer. Dkt. Nos. 22 and 23. Petitioner has not filed a traverse, and the deadline to do so has since passed. The Court has carefully considered the briefs submitted by the parties. For the reasons set forth below, the petition is DENIED.

## I. PROCEDURAL HISTORY

On August 26, 2014, the Contra Costa County District Attorney filed an amended information charging petitioner with forcible rape (Cal. Penal Code § 261(a)(2)), kidnapping for a sexual purpose (Cal. Penal Code § 209(b)(1)) and attempted second degree robbery (Cal. Penal Code §§ 212, 212.5(c) & 664). The information also alleged that, in connection with the rape count, Petitioner substantially increased the risk of harm by kidnapping the victim. Ans., Ex. 1[1] ("CT") at 512–13.

On September 23, 2014, a jury found Petitioner guilty of forcible rape, but found the

---

[1] The exhibits to the Answer are docketed at Dkt. No. 23.

kidnapping allegation not true.  The jury acquitted Petitioner of kidnapping for a sexual purpose and was unable to reach a verdict on the attempted robbery count.  CT at 663–64.  The trial court declared a mistrial on the attempted robbery count, and the prosecutor subsequently dismissed this count.  CT at 663, 676.  On November 2, 2014, Petitioner was sentenced to a term of eight years.  CT 675–76, 83.

On March 28, 2016, the California Court of Appeal affirmed the conviction in an unpublished decision.  *People v. Murray*, 2016 WL 1179434 (Cal. Ct. App. Mar. 28, 2016).  On June 8, 2016, the California Supreme Court denied summarily denied the petition for review.  Ans., Ex. 8.

On October 5, 2016, Petitioner filed the instant federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Dkt. No. 1.  On November 9, 2016, the Court found that the petition stated the following cognizable claims: (1) juror misconduct; (2) trial court error in failing to declare a mistrial; and (3) ineffective assistance of counsel for failing to investigate or use Petitioner's sister as a witness.  Dkt. No. 5.  The Court ordered Respondent to show cause why a writ of habeas corpus should not be granted.  Dkt. No. 5.  On January 11, 2017, Respondent filed a motion to dismiss Claim No. 3 for failure to exhaust, which the Court granted.[2]  Dkt. Nos. 12 and 14.  Petitioner advised the Court that he wished to dismiss his unexhausted claims, and proceed solely with the exhausted claims.  Dkt. No. 16.  The Court ordered Respondent to file an answer to the exhausted claims.

## II.  BACKGROUND

On March 18, 1997, Petitioner raped Jane Doe, but he was not charged at that time.  In November 2010, Petitioner was arrested for a separate offense and a DNA swab was taken pursuant to the arrest.  The DNA was found to match the DNA from the vaginal sample taken from Jane Doe at the time of the 1997 rape.  In 2011, Petitioner was charged with the 1997 rape of Jane Doe, and the information also charged him with kidnapping and attempted second-degree

[2] In the August 1, 2017 Order Granting Motion to Dismiss and Requiring Election by Petitioner, the Court noted that Petitioner also appears to allege an additional claim that trial counsel was ineffective for failing to request that the trial court excuse the juror that committed misconduct, but found that this claim was unexhausted.  Dkt. No. 14 at 2–3.

robbery.  Ans., Ex. 2 ("RT") at 339–41, 361–63.

Because Petitioner's claims are unrelated to the facts of the underlying offense, the Court will not relate the evidence presented at trial regarding the offense.  The Court only relates the facts related to Petitioner's claims that the trial court erred in failing to discharge a juror for cause and in failing to discharge the jury after it twice reported that it was unable to reach a verdict.

The trial began on September 2, 2014.  On September 9, 2014, during a break, Juror No. 6 approached the prosecution witness, Jennifer Smith, a forensic DNA analyst for Cellmark Forensics.  Ms. Smith was waiting to take the stand.  Juror No. 6 asked Ms. Smith where she was from, and Ms. Smith responded that she was from Dallas, Texas.  Juror No. 6 commented that it wasn't too terrible of a flight, and Ms. Smith agreed and mentioned that she flew Southwest.  RT 896–900.

The court admonished her for speaking to the juror, and instructed her to respond to any future interactions with, "I'm sorry, I cannot speak with you because you're a juror" and promptly end the conversation.  Ms. Smith stated that although the prosecutor had pre-instructed her not to speak to jurors, she had responded to the juror's questions because she did not want to be rude. RT 896–900.

After this admonishment, Ms. Smith took the stand and, in her capacity as an expert in DNA analysis and identification, testified regarding testing the buccal swabs taken from Petitioner in 2010, and confirming that the DNA in the buccal swab matched the DNA in the 1997 vaginal sample.  She described receiving and processing the buccal swabs; the DNA extraction procedure; and the development of the DNA profile.  She testified that she reviewed the DNA profile of the vaginal swab and the related report.  RT 900–44.

On the afternoon of September 16, 2014, the jury retired for deliberations.  RT 1530.  On September 17, 2014, the jury returned for deliberations.  RT 1540–41.  On the morning of September 18, 2014, the jury informed the court that they were unable to reach a decision and requested a break.  RT 1543.  The court brought in the jury and asked the jury foreperson to inform him, without indicating where the jurors stood on the vote, if the jury required assistance with any legal issues or needed additional readback from the court reporter.  RT 1547.  The jury

foreperson stated that neither was needed.  RT 1547.  The court then requested that the jury continue their deliberations:

> I know the case has been going on for about two weeks of testimony and deliberations, two weeks of testimony and argument, so forth, and that you've been deliberating for about a day, which is relatively a short period of time for a case of this complexity.  So I am going to ask that you continue to deliberate and try to reach a verdict if you can in accordance with all the instructions you've been given by Judge Maier.  And if after continuing to attempt, you believe you're unable to reach a verdict, let us know and we'll talk again.  But I want you to keep trying if you would, please.
>
> So if you'd return to the jury room, I appreciate it.

RT 1548–49.  The jury left the courtroom and went to lunch almost immediately thereafter, returned at 1:30 p.m., and deliberated until 3 p.m.  RT 1551, 1557.  The jury then adjourned for three days.  RT 1551.

On September 22, 2014, the jury resumed deliberations.  RT 1551.  Less than half an hour after restarting their deliberations, the jury again sent a note to the court indicating that they could not reach a decision.  RT 1553. The court expressed concern that the jury had only deliberated for a total of approximately five hours:

> So the sum total of hours of deliberating is probably five, if that.  It's not even a full day of deliberation.  That's my concern is that they really haven't taken the time, they're throwing up their hands.

RT 1557.  The court brought the jury back in and further instructed the jury as follows:

> So, ladies and gentlemen, I do want to note that even though you've been deliberating a number of days, it still has been a short amount of time.  I do have a further instruction to give you.
>
> It has been my experience on more than one occasion that a jury which initially reported that it was unable to reach a verdict was ultimately able to arrive at a verdict.  To assist you in your further deliberations, I'm going to further instruct you as follows:
>
> Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so, based solely on the evidence presented and regardless of how long it takes to do so.
>
> It is your duty as jurors to carefully consider, weigh, and evaluate all of the evidence presented at the trial, to discuss your views regarding the evidence, and to listen and consider the views of your fellow jurors.
>
> In the course of your further deliberations, you should not hesitate to reexamine your own views or to request your fellow jurors to reexamine theirs.  You should not hesitate to change a view you once held if you are convinced it is wrong, or to suggest other jurors change their views if you are convinced they are wrong.
>
> Fair and effective jury deliberations require a frank and forthright exchange of views.

4

As I previously instructed you, each of you must decide the case for yourself and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors.

It is your duty as jurors to deliberate with the goal of arriving at a verdict, if you can do so, without violence to your individual judgment. Both the People and the defendant are entitled to the individual judgment of each juror.

As I previously instructed you, you have the absolute discretion to conduct your deliberations in any you deem appropriate.

May I suggest that since you've been unable to arrive at a verdict using the methods that you have chosen, that you consider to change the methods you have been following at least temporarily and try new methods. For example, you may wish to consider having different jurors lead the discussions for a period of time.

You may wish to experiment with reverse role-playing by having those on one side of the issue present and argue the other side's positions, and vice versa. This might enable you to better understand the others' positions.

By suggesting you should consider changes in your methods of deliberations, I want to stress that I am not dictating or instructing you as to how to conduct your deliberations. I merely find that you may find it productive to make sure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors.

I also suggest you reread instruction 200 and instruction 3550. These instructions pertain to your duties as jurors and make recommendations as to how you should deliberate. The integrity of a trial requires that jurors at all times during deliberations conduct themselves as required by these instructions.

The decision the jury renders must be based on the facts and the law. You must determine what facts have been proved from the evidence received in the trial and not from any other source. A fact is something proved by the evidence or by stipulation.

Second, you must apply the law that I state to you to the facts as you determine them and in this way arrive at your verdict.

You must accept and follow the law as I state it to you regardless of whether you agree with the law.

If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions. Instruction 3550 defines the jury's duty to deliberate. The decisions you make in this case must be based on the evidence received in the trial and the instructions given by the Court. These are the matters this instruction requires you to discuss for the purpose of reaching a verdict. You should keep in mind the recommendations this instruction suggests when considering the additional instructions, comments, and suggestions I have made in the instructions now presented to you.

I hope my comments and suggestions may have been of some assistance to you. I will ask that you continue your deliberations at this time. If you have other questions, concerns, requests, or any communications you desire to report to me, please put those in writing on the form my bailiff will provide you, have them signed and dated by your foreperson or one or more of the other jurors, and then notify the deputy.

1   |   I can see from the crossed arms and the expressions on the faces that there's a lot of
2   |   frustration, and I'm hoping you go back with a fresh attitude, see what you can do. Thank
        you.

3   RT 1558–62. The jury returned to deliberate. Later that afternoon, the jury sent a note seeking

4   clarification as to the kidnapping enhancement charge. The court referred the jury to jury

5   instruction 3719 for charge enhancement part B; to jury instruction 1203 for the elements of

6   kidnapping; and to jury instruction 3175 for charge enhancement part C. RT 1563. The court also

7   instructed the jury to consider the court's response in connection with all of the other jury

8   instructions. RT 1563.

9   The next day, September 23, 2014, the jury returned to continue deliberations. Later that

10  morning, the jury informed the court that it had reached a verdict on counts one and two, but was

11  unable to reach a verdict as to count 3. RT 1566. The court declared a mistrial as to count 3, and

12  accepted the guilty verdict with respect to count one (forcible rape), the not guilty verdict with

13  respect to count two (kidnapping), and the not true finding with respect to the enhancement to the

14  rape count. RT 1570–72.

### III. DISCUSSION

**A.    Standard of Review**

17  A petition for a writ of habeas corpus is governed by AEDPA. This Court may entertain a

18  petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a

19  State court only on the ground that he is in custody in violation of the Constitution or laws or

20  treaties of the United States." 28 U.S.C. § 2254(a).

21  A district court may not grant a petition challenging a state conviction or sentence on the

22  basis of a claim that was reviewed on the merits in state court unless the state court's adjudication

23  of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

24  application of, clearly established Federal law, as determined by the Supreme Court of the United

25  States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

26  light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v.*

27  *Taylor*, 529 U.S. 362, 412–13 (2000). Additionally, habeas relief is warranted only if the

28  constitutional error at issue "'had substantial and injurious effect or influence in determining the

6

jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). The final state court decision from the California Supreme Court summarily denied the petition for review. The California Court of Appeal's decision was the last reasoned state court decision that addressed the claims raised by Petitioner. Accordingly, in reviewing this habeas petition, this Court reviews the California Court of Appeal's decision. *See Ylst*, 501 U.S. at 803–04; *Barker*, 423 F.3d at 1091–92.[3]

---

[3] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker*, 423 F.3d at 1092 n.3 (citing *Lambert v. Blodgett*, 393 F.3d 943, 970 n.17 (9th Cir. 2004), and *Bailey v. Rae*, 339 F.3d 1107, 1112–13 (9th Cir. 2003)). The look through rule is applicable here as the Ninth Circuit has held that "it is a

**B.      Petitioner's Claims**

Petitioner alleges the following cognizable claims for habeas relief: (1) juror misconduct; and (2) error by the trial court in failing to declare a mistrial when the jury was deadlocked.

**1.      Juror Misconduct**

Petitioner argues that a juror committed misconduct when she spoke to a state witness. Pet. at 5.  The state court rejected this claim as follows:

> 1. *Failure to discharge a juror*
> The facts concerning defendant's first claimed error are not in dispute. During the fifth day of trial testimony, following a short recess, defense counsel informed the court that she had just seen Juror No. 6 speaking with a prospective witness, Jennifer Smith, in the hall outside the courtroom. Defense counsel told the court, "I caught just a very little snippet.... But it was—they were having a conversation, it appeared." Counsel continued, "So, obviously, that's not appropriate. I think that it needs to be addressed with both the witness and then the jurors need to be reminded." The prosecutor commented that the juror approached the witness and asked her where she was from and they appeared to have a brief conversation about travel. When defense counsel told him the two were talking, he "went out and had Ms. Smith come in to stop the conversation." The judge indicated she would speak with Smith and defense counsel responded, "I'm willing to accept the representation [of the prosecutor]. Well, I guess if you want to ask her. But I think that—I'm not sure we need to isolate (Juror No. 6). But the jurors need to be reminded that even casual conversation gives an appearance of impropriety."
>
> Outside the jury's presence, the court asked Smith, "It's my understanding there was a juror who approached you and just had a conversation with you about a matter not related to this case?" Smith responded, "That's correct. She asked me where I was from so I told her Dallas, Texas. [¶] And she had asked, you know, 'Well, that's'—or made the comment that, you know, 'That's not too terrible of a flight.' [¶] I said, 'No, it's not. I flew Southwest.' [¶] You know, it was just—it wasn't much more. It was just that type of conversation." The court pointed out to Smith that she had been instructed not to speak with jurors, and Smith responded, "Yes. She did, in fact, speak to me so I didn't—I didn't want to be rude so I—I did answer her questions." The court told Smith that in the future she should respond to such an approach by stating that she could not speak with the person because she was a juror, and told the attorneys, "So do you want—I'm just going to instruct the jury not to have conversations with anybody that could potentially be a witness."
>
> After Smith testified the court instructed the jury: "It's my understanding that one of the jurors possibly briefly spoke, possibly accidentally, to a witness. Apparently the content of the conversation had nothing to do with the trial, had to do with travel. But it—that cannot happen. So I may not have admonished you clearly enough, but I do want to make it clear that the appearance of impropriety occurs not only if you speak to one of the attorneys, but if you speak to any witness or even if you think it's a potential witness. We instruct our witnesses not to speak to somebody with a juror badge. So there was a misunderstanding

---

common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear." *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

there also on behalf of the witness because that person obviously knew they were a witness. But I want to emphasize very strongly to you, unless you are certain the person is not a witness, please do not approach them and speak with them. It's very important that we not even have the appearance of impropriety."

Defense counsel made no objection to the trial court's proposed course of action, nor did she request that the court question the juror or remove the juror for misconduct. On appeal, however, defendant argues that because the court had previously instructed members of the jury numerous times not to speak with anyone connected with the case, the juror disobeyed the court's express instructions. Despite trial counsel's failure to object or request the court to do anything further, he contends the court was obligated sua sponte to excuse Juror No. 6 for such misconduct. He contends that the court's failure to do so denied him a fair trial and an impartial jury in violation of his rights under the Sixth and Fourteenth Amendments.

It is doubtful whether the brief exchange between Juror No. 6 and the trial witness can be considered misconduct. As in *People v. Goff* (1981) 127 Cal.App.3d 1039, 1046, "the conversations were so brief, so innocuous and so unrelated as not to constitute misconduct. The essence of juror misconduct, as defined in ... section 96, involves communications relating to the trial." Defendant's trial counsel correctly characterized the exchange as "casual conversation," which, though improper, was brief and entirely unrelated to the matter on trial. When the matter was brought to the court's attention, the court properly took immediate steps to determine what had occurred. Moreover, as *Goff* also points out, any error was waived by the failure to have requested a mistrial, dismissal of the juror or further inquiry. (*Id.* at p. 1046.) Indeed, trial counsel's comments indicated her complete approval with the manner in which the court handled the situation. Further, even if the juror were deemed to have engaged in misconduct and the objection were not waived, the court did not abuse its discretion in failing to excuse the juror, deeming the incident to have been inconsequential and threatening no prejudice to defendant. (E.g., *People v. Bradford* (1997) 15 Cal.4th 1229, 1351.) Defendant has shown no prejudice, and the presumption of prejudice from juror misconduct has been overcome by the "trifling" nature of the misconduct, in addition to the weight of the DNA and other evidence of defendant's guilt; there would be no basis to reverse the judgment even if, contrary to our conclusion, there had been any error in the trial court. (*People v. Ryner* (1985) 164 Cal.App.3d 1075, 1083–1084.) Certainly this minor incident did not deny defendant an impartial jury or a fair trial.

*Murray*, 2016 WL 1179434, at *1–*2.

### a.    Standard

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." *Tinsley v. Borg*, 895 F.2d 520, 523-24 (9th Cir. 1990) (internal quotation marks omitted). The Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might

theoretically affect their vote.  *Id.*  Due process only means a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.  *Id.*  Such determinations may properly be made at a hearing.  *Id.*

Clearly established Supreme Court precedent "compels a criminal trial court to consider the prejudicial effect of *any* external contact that has a 'tendency' to influence the verdict, irrespective of whether it is about the matter pending before the jury." *Tarango v. McDaniel*, 837 F.3d 936, 946 (9th Cir. 2016) (citing *Mattox v. United States*, 146 U.S. 140, 150–51 (1892)) (emphasis in original).  "[P]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox v. United States*, 146 U.S. 140, 142 (1892).  *Mattox*'s "presumption is not conclusive, but the burden rests heavily on the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Remmer v. United States*, 347 U.S. 227, 229 (1954).  A state court decision that contravenes the "bedrock principles" of *Mattox* and *Remmer* is "'contrary to' clearly established Supreme Court precedent." *Godoy*, 861 F.3d at 960 (quoting 28 U.S.C. § 2254(d)(1).

When faced with allegations of improper contact between a juror and an outside party, courts apply a settled two-step framework. *Godoy*, 861 F.3d at 959.  At step one, the court asks "whether the contact was 'possibly prejudicial,' meaning it had a 'tendency' to be 'injurious to the defendant.'" *Id.* (quoting *Mattox*, 146 U.S. at 150).  If so, "the contact is 'deemed presumptively prejudicial' and the court proceeds to step two, where the 'burden rests heavily upon the [state] to establish' the contact was, in fact, 'harmless.'" *Id.* (quoting *Remmer*, 347 U.S. at 229).  "If the state does not show harmlessness, the court must grant the defendant a new trial." *Id.* (internal quotation marks and citation omitted).  "When the presumption arises but the prejudicial effect of the contact is unclear from the existing record, the trial court must hold a 'hearing' to 'determine the circumstances [of the contact], the impact thereof upon the juror, and whether or not it was prejudicial.'" *Id.* (quoting *Remmer*, 347 U.S. at 229–30).

"[I]f an unauthorized contact with a juror is *de minimus*, the defendant must show that the

10

United States District Court
Northern District of California

communication could have influenced the verdict before the burden of proof shifts to the prosecution." *Caliendo v. Warden of Calif. Men's Colony*, 365 F.3d 691, 696 (9th Cir. 2004). But the *Mattox* presumption applies to any unauthorized communication that "crosses a low threshold to create the potential for prejudice" and "raises a risk of influencing the verdict." *Id.* at 697. The government must rebut the *Mattox* presumption with a strong contrary showing that the improper contact was harmless. *See id.* at 698 (reviewing *de novo* correct question of whether, after an evidentiary hearing, government met its heavy burden of proof under *Mattox* and *Remmer*).

In determining whether an unauthorized communication raised a risk of tainting the verdict, courts should consider factors such as whether the unauthorized communication concerned the case, the length and nature of the contact, the identity and role at trial of the parties involved, evidence of actual impact on the juror, and the possibility of eliminating prejudice through a limiting instruction. *See Caliendo*, 365 F.3d at 697–98 (critical prosecution witness' unauthorized conversation with multiple jurors for 20 minutes was possibly prejudicial under *Mattox*, even if conversation did not concern the trial).

### b.    Analysis

The state court's conclusion that the contact was neither presumptively prejudicial nor actually prejudicial is consistent with *Mattox* and *Remmer*, and was not based on an unreasonable determination of the facts. The improper contact at issue in this case differs in critical ways from the improper contact in the relevant Supreme Court jurisprudence. In *Mattox*, the bailiff stated in the jury's presence that the victim was the third person that the defendant had killed and that the defendant would be tried again after the trial. *Mattox*, 146 U.S. at 142–44. The petitioner sought a new trial on numerous grounds, including the ground that the bailiff's contact with the jurors was improper. The petitioner proffered affidavits from the jurors regarding the bailiff's statements in support of his motion, and the court refused to consider the affidavits. The Supreme Court found that the trial court committed reversible error in failing to consider juror affidavits regarding the bailiff's statements, but granted the new trial on different grounds. *Id.* at 150–51. In *Remmer*, an unnamed person told the foreman of the jury that he "could profit by bringing in a verdict favorable" to the defendant. *Remmer*, 347 U.S. at 228. The court had the matter investigated by

the Federal Bureau of Investigation, which concluded that the remark had been made in jest. The petitioner and defense attorney were never informed of this improper contact. The Supreme Court remanded this case to the district court to hold a hearing to determine whether the improper contact had harmed the petitioner. *Id.* at 229–31.

The nature and magnitude of the improper contact in this case was very different. The improper contact consisted of a brief discussion unrelated to the trial. There is no evidence indicating that Juror No. 6 was influenced in any way by the conversation. In addition, while Ms. Smith's testimony was important, it was not the only testimony linking Petitioner's DNA to Jane Doe's vaginal swab. Ms. Smith was one of several criminal analysts who testified. Prior to Ms. Smith, there was testimony from three other witnesses regarding the collection of the DNA samples from the victim in 1997 and from Petitioner in 2010; the DNA analysis performed on the vaginal swab from the victim; and the match in CODIS (Combined DNA Index System), the state database of DNA samples collected from certain crime scenes. Lillian Tugao, a senior criminal analyst for the California Department of Justice, testified that when the CODIS database reports a match, state policy is to double-check that match by redoing the DNA process using another sample from the arrestee's original submission. RT 886. Ms. Smith performed this second DNA analysis of Petitioner's buccal swab, and her testimony was regarding this repeat DNA testing. Because the relevant Supreme Court jurisprudence regarding improper contact with jurors involved much more significant deliberate interference with the deliberation process, the nature of the misconduct here is factually distinguishable from clearly established Sixth Amendment Supreme Court precedent. Given these facts, the state court reasonably concluded that the contact did not have a tendency to be injurious to Petitioner because of the contact's "trifling" nature, and also reasonably concluded that even if the contact had a tendency to be injurious to Petitioner, the contact was harmless because of the weight of the evidence of Petitioner's guilt.

The state court's denial of this claim thus was not contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court; nor was the denial based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Federal habeas relief is denied on this claim.

### 2.    Failure to Declare Mistrial

Petitioner argues that the trial court erred by failing to declare a mistrial when the jury was deadlocked.  Pet. at 5.  The state court rejected this claim as follows:

> 2. *Failure to declare mistrial when jury reported deadlock*
> Defendant's second contention is that the court coerced a compromise verdict when it urged the jury to continue deliberating after the jury twice advised the court that it could not reach a verdict. The presentation of evidence in this case consumed some seven days and the jury was instructed and heard argument on an additional day. The jury deliberated for less than a half hour on that final day and its deliberations spread over an additional four days before verdicts were returned. The parties disagree as to the number of hours over which deliberations actually extended—taking into account such matters as delays in awaiting readback of testimony and possible discrepancies in the clerk's minutes—but accepting the calculations in defendant's appellate brief, the jury deliberated 14 hours, 59 minutes "overall." A review of the interchanges between the court and the jury during this period provides no basis to conclude that the court's remarks to the jury, urging them to continue their deliberations, can in any sense be considered coercive.
>
> Section 1140 provides that a jury may not be excused after the cause has been submitted to it before a verdict has been reached without the consent of both parties "unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." "The determination whether there is a reasonable probability of agreement rests within the sound discretion of the trial court. [Citation.] 'Although the court must take care to exercise its power without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency [citation], the court may direct further deliberations upon its reasonable conclusion that such direction would be perceived "'as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered.'"'" (*People v. Harris* (2005) 37 Cal.4th 310, 363–364.) In *Harris,* although the jury informed the court on three occasions that it was deadlocked, the trial court did not abuse its discretion by refusing to declare a mistrial. (*Id.* at pp. 364–365; see also *People v. Rodriguez* (1986) 42 Cal.3d 730, 774–777 [no error in denying mistrial motion when jury stated it was "hopelessly deadlocked" after 18 days of deliberations, 11 days of renewed deliberations when an alternate was placed on the panel, and four earlier messages to the court that it was deadlocked].)
>
> Here, the jury retired to deliberate following closing arguments and instructions on Tuesday, September 16, 2014, and deliberated the following day with several requests for readbacks of testimony. On Thursday, September 18, the jury submitted a note that it was "unable to reach a decision." The jury returned to the courtroom where a substitute judge filling in for the trial judge asked "if there's any legal issue that I could assist you with, any instructions or clarification of the instructions ... that would be helpful for the jurors" or whether "there's any additional testimony that you think would be helpful," to which the foreperson responded there were none. After determining that there had been no change in the vote within the jury, the court requested the jury to deliberate further with the following explanation: "I know the case has been going on for about two weeks of testimony and deliberations, two weeks of testimony and argument, so forth, and that you've been deliberating for about a day, which is relatively a short period of time for a case of this complexity. So I am going to ask that you continue to deliberate and try to reach a verdict if you can in accordance with all the instructions you've been given by Judge Maier. And if after continuing to attempt, you believe you're unable to reach a verdict, let us know and we'll talk again. But I want you to keep trying if you would, please. So if you'd return to the jury room, I appreciate it." The jury deliberated until 3:00 p.m. that day and then recessed until the following Monday.

After resuming deliberations for less than an hour on Monday, September 22, the jury sent another note stating, "We are unable to make a decision." Over defendant's objection, the trial judge (who had returned) advised counsel that she would give the jury additional instructions. In explanation, the court "note[d] for the record one of the reasons I'm concerned about the length of the deliberations is this was a lengthy trial. And there was not one juror, excepting the two alternates, that took detailed notes. It was astounding to me. Once in a while one juror would scribble something here or there, but there was nobody taking very detailed notes as to each witness the way the court was. So I'm finding that, you know, the length of time that they've had to deliberate is very short.... So the sum total of hours of deliberating is probably five, if that. [FN 2] It's not even a full day of deliberation. That's my concern is that they really haven't taken the time, they're throwing up their hands."

> FN 2: Defendant disputes this number, contending that at that point the jury had been deliberating for 10 hours, 36 minutes. Whether five hours or 10, or more likely some number in between, we do not consider the difference significant to the determination of whether the jury could reasonably have felt coerced into reaching a verdict.

When the jury returned to the courtroom, the court addressed the jury, in full, as follows:

"So ladies and gentlemen, I do want to note that even though you've been deliberating a number of days, it still has been a short amount of time. I do have further instructions to give you. It has been my experience on more than one occasion that a jury which initially reported that it was unable to reach a verdict was ultimately able to arrive at a verdict. To assist your further deliberations, I'm going to further instruct you as follows: Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so, based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so. It is your duty as jurors to carefully consider, weigh, and evaluate all of the evidence presented at the trial, to discuss your views of your fellow jurors. In the course of your further deliberations, you should not hesitate to reexamine your own views or to request your fellow jurors to reexamine theirs. You should not hesitate to change a view you once held if you are convinced it is wrong, or to suggest other jurors change their views if you are convinced they are wrong. Fair and effective jury deliberations require a frank and forthright exchange of views. As I previously instructed you, each of you must decide the case for yourself and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict, if you can do so, without violence to your individual judgment. Both the People and the defendant are entitled to the individual judgment of each juror.

"As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate. May I suggest that since you've been unable to arrive at a verdict using the methods that you have chosen, that you consider to change the methods you have been following at least temporarily and try new methods. For example, you may wish to consider having different jurors lead the discussions for a period of time. You may wish to experiment with reverse role-playing by having those on one side of the issue present and argue the other side's positions, and vice versa. This might enable you to better understand the others' positions. By suggesting you should consider changes in your methods of deliberations, I want to stress that I am not dictating or instructing you as to how to conduct your deliberations. I merely find that you may find it productive to make sure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors. I also suggest you reread instruction [CALCRIM No.] 200 and instruction [CALCRIM No.] 3550. These instructions pertain to your duties as jurors and make recommendations as to how you should deliberate. The integrity of a trial requires that jurors at all times during deliberations conduct themselves as required by these instructions.

14

"The decision the jury renders must be based on the facts and the law. You must determine what facts have been proved from the evidence received in the trial and not from any other source. A fact is something proved by the evidence or by stipulation. Second, you must apply the law that I state to you to the facts as you determine them and in this way arrive at your verdict. You must accept and follow the law as I state it to you regardless of whether you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions. Instruction 3550 defines the jury's duty to deliberate. The decisions you make in this case must be based on the evidence received in the trial and instructions given by the court. These are the matters this instruction requires you to discuss for the purpose of reaching a verdict. You should keep in mind the recommendations this instruction suggests when considering the additional instructions, comments, and suggestions I have made in the instructions now presented to you.

"I hope my comments and suggestions may have been of some assistance to you. I will ask that you continue your deliberations at this time. If you have other questions, concerns, requests, or any communications you desire to report to me, please put those in writing on the form my bailiff will provide you, have them signed and dated by your foreperson or one or more of the other jurors, and then notify the deputy. I can see from the crossed arms and the expressions on the faces that there's a lot of frustration, and I'm hoping that you go back with a fresh attitude, see what you can do. Thank you."

The jury deliberated further that day, requested and received clarification regarding the kidnapping enhancement, and recessed for the night at 4:42 p.m. After approximately a half hour of further deliberations the following day, September 23, the jury returned with its verdicts on two of the three counts.

We have set out the court's remarks in full because they, better than any characterization, make plain that the court did not suggest "displacing the jury's independent judgment 'in favor of considerations of compromise and expediency'" (*People v. Breaux* (1991) 1 Cal.4th 281, 319), or place "undue pressure upon the jury to reach a verdict, whatever its nature, rather than no verdict at all" (*People v. Carter* (1968) 68 Cal.2d 810, 817). The court was never advised as to how the jury was divided numerically, so that the minority (if there was a minority) could not have viewed the court's remarks as exerting pressure upon them to conform their opinion to that of the majority. (See *Carter, supra*, at pp. 819–820.) The court's remarks contain none of the elements of the discredited so-called "*Allen* charge" or "dynamite charge." (See *People v. Gainer* (1977) 19 Cal.3d 835, disapproved on another ground in *People v. Valdez* (2012) 55 Cal.4th 82, 163.) As in *People v. Sandoval* (1992) 4 Cal.4th 155, 196, "[n]othing in the record suggests that the jury was coerced in any way."

In short, the court did not abuse its discretion in requesting the jury to deliberate further, without coercion, and in determining that there was a reasonable probability that further deliberations would produce agreement.

*Murray*, 2016 WL 1179434, at *2–*5.

### a. Standard

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). Thus, an instruction is unconstitutionally coercive if it denies the defendant the due process right to a trial by a fair and impartial jury. *DeWeaver v. Runnels*, 556 F.3d 995, 1007 (9th Cir. 2009). The use of a

15

supplemental jury charge given by the court to encourage a jury to reach a verdict after the jury has been unable to agree for some period of deliberation, sometimes referred to as an *Allen* charge, has long been sanctioned. *See Allen v. United States*, 164 U.S. 492, 501–02 (1896).

After AEDPA, the Ninth Circuit has said that in a habeas case involving a state conviction the questions for the court in determining whether a supplemental charge had an impermissible coercive effect on the jury are (1) whether the applicable state court looked at the totality of the circumstances in determining if the instruction was coercive; and (2) whether that court's determination on the coercion question was reasonable. *Parker v. Small*, 665 F.3d 1143, 1148 (9th Cir. 2011). Federal courts reviewing a supplemental charge given by a state court must consider the supplemental instruction "'in its context and under all circumstances.'" *Lowenfield*, 484 U.S. at 237 (citation omitted). Whether the comments and conduct of the state trial judge violated due process ultimately turns on whether "'the trial judge's inquiry would be likely to coerce certain jurors into relinquishing their views in favor of reaching a unanimous decision.'" *Jiminez*, 40 F.3d at 979 (quoting *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983). Relief will not be granted "unless it is 'clear from the record' that an *Allen* charge had an impermissibly coercive effect on the jury." *Rodriguez v. Marshall*, 125 F.3d 739, 750 (9th Cir. 1997).

> **b.** **Analysis**

After carefully reviewing the record and keeping in mind the above legal principles, the Court finds that the state court's denial of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Nor was the denial of this claim based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Only two Supreme Court cases have applied *Allen*'s prohibition on a coercive supplemental charge, *Lowenfield v. Phelps*, 484 U.S. 231 (1988), and *Early v. Packer*, 537 U.S. 3 (2002).

In *Lowenfield*, after a day and a half of deliberations, the jury indicated that it was unable to reach a decision on a sentencing recommendation in a capital trial. The court polled the jury twice as to whether further deliberations would assist them in arriving at a verdict. After the

16

second poll, all but one juror responded that further deliberations would be helpful.  The court then reinstructed the jury as follows:

> Ladies and Gentlemen, as I instructed you earlier if the jury is unable to unanimously agree on a recommendation the Court shall impose the sentence of Life Imprisonment without benefit of Probation, Parole, or Suspension of Sentence.
>
> When you enter the jury room it is your duty to consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a just verdict if you can do so without violence to that individual judgment.
>
> Each of you must decide the case for yourself but only after discussion and impartial consideration of the case with your fellow jurors. You are not advocates for one side or the other. Do not hesitate to reexamine your own views and to change your opinion if you are convinced you are wrong but do not surrender your honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

*Lowenfield*, 484 U.S. at 235 (internal quotation marks and citation omitted).  The jury resumed its deliberations and, thirty minutes later, returned a verdict sentencing the petitioner to death on all three counts of first-degree murder.  The Supreme Court considered the supplemental charge "in its context and under all the circumstances" and held that, on these particular facts, the combination of the polling of the jury and the supplemental instruction was not "coercive" in such a way as to deny any constitutional right.  *Id.* at 241.  In so holding, the Supreme Court noted that the supplemental charge was not a "traditional" *Allen* charge because it did not speak specifically to the minority jurors, and that in *Allen*, the Supreme Court had found that the *Allen* charge did not violate the petitioner's constitutional rights because it was reasonable to urge the minority to consider the views of the majority and question whether their own views were reasonable under the circumstances.  *Id.* at 237.  The Supreme Court further noted that the defense counsel's failure to object to either the polling or the supplemental charge indicated that the potential for coercion was not apparent at that time.  *Id.* at 240.

In *Early*, a California jury struggled to reach a verdict on a count of second-degree murder and one count of attempted murder.  After twenty-eight hours of deliberation, the jury had returned sealed verdict forms with respect to fifteen other counts (which included attempted robbery, assault with a deadly weapon, and assault with a firearm).  At that time, juror Radcliff sent a note, requesting to be dismissed and stating that the seriousness of the charges was causing

17

her to feel burnt out. After the judge requested that she "hold out just a little bit longer," she agreed to continue. The next day, the foreman sent the judge a note stating that they were no longer able to deliberate because Radcliff did not appear capable of understanding the rules or of reasoning. The judge summoned the jury back into the courtroom and addressed the issue as follows. He informed the jurors that a juror has "a right to disagree with everybody else" but not a right to not deliberate. In response to the judge's questioning, the foreman indicated that the last vote count had been 11 to 1 and that further deliberations would be helpful. The judge then gave the following instruction:

> What you do is — like I think what the instructions were — you apply the facts to the law and you arrive at a decision. The law is right there, and I think elements of the law was [sic] given to you in those instructions. They do this or not do this? Was it proven beyond a reasonable doubt? This element, this element, this element? If they did and you find unanimously they did that, you must follow the law and find them either guilty or not guilty of that charge.

*Early*, 537 U.S. at 4–5. At this point, defense counsel objected on the ground that the judge was improperly instructing the jury as to its manner of deliberation. This objection was overruled and the judge continued:

> Ladies and Gentlemen, the only thing I'm going to tell you right now is; once again, I told you, you'll look up in the instructions paraphrasing it, I think I'm using the correct words: you're the sole judges of the facts. You determine the facts. You then apply the law to those facts as I state it to you, and you must accept and follow the law. You can't make up your own law. You must accept and follow the law as I state it to you.

*Early*, 537 U.S. at 5–6. Soon after deliberations resumed, Radcliff again asked to be dismissed, complaining about feelings of distrust and disrespect from the other jurors, and stating that she had "reached a point of anger" and did not believe that she could be objective. The judge met with Radcliff and the foreman, and confirmed that Radcliff was continuing to deliberate. The jury resumed its deliberations and, approximately two days later, returned a guilty verdict on the attempted-murder count. The following, the jury returned a guilty verdict on the second-degree murder charge. *Id.* at 6.

The state appellate court rejected the petitioner's claim that the comments to Radcliff and the jury were coercive and denied the petitioner his due process right to a fair and impartial jury. The federal district court also denied habeas relief on this claim, but the Ninth Circuit reversed and instructed the district court to grant habeas relief on the murder convictions. *Id.* at 7. The

1    Supreme Court reversed the Ninth Circuit, finding that the Ninth Circuit erred in finding that the

2    state court's denial of the claim was contrary to clearly established Federal law, as established by

3    the Supreme Court.  The Supreme Court specifically noted that the Ninth Circuit was incorrect in

4    finding that the state appellate court's statement that "there is nothing improper in urging the jury

5    to consider [the matter] further with the view to reaching an agreement as long as the language

6    used does not coerce a particular type of verdict" was contrary to clearly established federal law

7    because the supporting federal caselaw cited by the Ninth Circuit was inapplicable to state-court

8    proceedings.  *Id.* at 9–10.  The Supreme Court further noted that *Lowenfield* correctly set forth the

9    standard for analyzing supplemental charges.  *Id.* at 10.

10        Here, the state court considered the supplemental charge in its context and under all the

11   circumstances, as required by *Lowenfield*.  The state court examined the exact wording of the

12   supplemental charge; noted the time deliberations began, stopped, and restarted; noted the time

13   that notes were sent to the judge, whether for clarification or expressing inability to reach a

14   decision; and noted the overall time spent deliberating, as calculated by the trial judge and by the

15   petitioner.  Also, the supplemental charge at issue here is distinct from the sanctioned *Allen* charge

16   because it did not speak specifically to the minority jurors.  Nor could there be implied pressure on

17   the minority jurors here because the trial court did not poll the jurors.  The language of the

18   supplemental challenge also contained the conditional language that the jurors should arrive at a

19   verdict, if each juror could do so without violence to his or her individual judgment.  In addition,

20   the jury took an additional day to reach its verdict, which appears to be half of the overall time

21   spent deliberating, and ultimately did not reach a verdict on the third count.  The state court

22   reasonably determined that the supplemental charge here, in context and under all circumstances,

23   was not coercive.  *Cf. Rodriguez*, 125 F.3d at 750 (no coercion where judge not only advised

24   jurors not to surrender their sincerely held beliefs but 1) made no comment on numerical split, 2)

25   did not know whether the majority favored conviction or acquittal, and 3) did not know the

26   identity of the holdouts; fact that the jury deliberated for four more days and called for a reading of

27   testimony indicated that there had been no coercion).  The state court's denial of this claim was

28   neither based on an unreasonable determination of the facts, nor contrary to, or an unreasonable

application of, clearly established federal law. Federal habeas relief is denied on this claim.

**C.    Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

### IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated:    2/7/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge